DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} In this original action, relator, Aldo Jeany, seeks a writ of mandamus: (1) ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him compensation for impairment of earning capacity, and (2) ordering the commission to enter an order finding that relator is entitled to compensation for impairment of earning capacity. Alternatively, relator seeks a writ of mandamus: (1) ordering the commission to vacate its order denying relator compensation for impairment of earning capacity, and (2) remanding the cause to the commission for an oral hearing regarding relator's application and instructing the commission that the evidence supports relator's request for compensation for impairment of earning capacity.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court.[1] The magistrate examined the evidence and issued a decision, wherein she made findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded: (1) the evidence showed that relator retired from his former employment because he was no longer able to perform that employment as a result of pain in his back and leg; (2) the commission abused its discretion by denying relator's request for impairment of earning capacity compensation on the basis that relator had voluntarily retired for reasons unrelated to his industrial injury; and (3) the commission abused its discretion by failing to address evidence that relator submitted in support of his claim that he had impaired earning capacity. The magistrate therefore recommended that "this court should issue a writ of mandamus ordering the commission to vacate its order denying relator's application for [impairment of earning capacity] and to issue a new order, either granting or denying the application, after considering the evidence in the record and concerning relator's post-injury earning capacity, further determining whether relator voluntarily retired from the entire workforce." (Magistrate's Decision, at ¶ 40.)
 {¶ 3} The commission objects to the magistrate's decision. According to the commission, the magistrate erred because: (1) the evidence does not support relator's claim that he is entitled to compensation for impairment of earning capacity; and (2) the magistrate erroneously re-weighed the evidence that was presented for the commission's review.
 {¶ 4} "An Industrial Commission's order is subject to correction in mandamus only upon a showing of an abuse of discretion. State, ex rel. Allied Wheel Products, Inc., v.Indus. Comm. (1956), 166 Ohio St. 47, 1 O.O.2d 190, 139 N.E.2d 41. An abuse of discretion occurs when the commission issues an order unsupported by `some evidence.'" State ex rel. OscoIndustries v. Indus. Comm. (1989), 43 Ohio St.3d 167, 168. "Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie." State ex rel. Kroger Co. v. Stover
(1987), 31 Ohio St.3d 229, 232. Determination of the weight and credibility of evidence belongs to the commission. State ex rel.Baker v. Indus. Comm., 97 Ohio St.3d 267, 2002-Ohio-6341, at ¶6, citing State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18, 20-21.
 {¶ 5} The burden of showing the existence of an impairment of earning capacity lies with a claimant. State ex rel. Pauley v.Indus. Comm. (1990), 53 Ohio St.3d 263, 264, citing State exrel. Apgar v. Indus. Comm. (1989), 42 Ohio St.3d 5, 7. Generally, "a claimant hoping to qualify for compensation under former R.C. 4123.57(A), in addition to proving pre- and post-injury earning capacity, must prove actual [impaired earning capacity]. * * * This showing demands evidence that the claimant's decreased earnings are directly attributable to the injury and not to any lack of interest or industriousness or, for that matter, other nonallowed conditions. Thus, the claimant must persuade the commission, in effect, that he or she wants to work and that only the injury-induced impairment stands in the way."State ex rel. Garon v. Univ. Hosp. of Cleveland (2000),88 Ohio St.3d 288, 290. (Emphasis sic.) See, also, former R.C.4123.57(A).[2]
 {¶ 6} On August 17, 1994, relator's request for compensation for impairment of earning capacity was heard before a district hearing officer ("DHO") who denied relator's request. The DHO found, among other things, that there was no evidence on file that demonstrated relator's industrial injury precluded him from engaging in employment for which he was academically or vocationally qualified. (Stip. R. 8.) From the DHO's order, relator appealed.
 {¶ 7} On October 11, 1994, the matter was heard before a staff hearing officer ("SHO"). At this hearing, relator submitted a vocational review dated October 9, 1994, by Molly S. Williams, vocational consultant, wherein Ms. Williams concluded that relator retained no post-injury earning capacity. (Stip. R. 10.)
 {¶ 8} Without referencing Ms. Williams' report, the SHO affirmed the DHO's order. In affirming the DHO's order, the SHO provided the following additional reasoning:
* * * The claimant retired on Social Security Retirement in 1983, after 45 years as a cement finisher. His retirement was two years prior to the 1985 date of diagnosis in this claim. There is no persuasive evidence on file to support a conclusion that the claimant did not voluntarily retire in 1983. Likewise, the claimant has offered no persuasive evidence to support his current contention in 1994 that he did not voluntarily decide to remove himself from the work force in 1983, after 45 years of work and at the age of 63 at that time.
The claimant testified at hearing that his Social Security Retirement and Union Pension pay him approximately $800.00 per month (gross amount) which is approximately what he would net at his Average Weekly Wage in this claim.
Finally, there is no persuasive evidence in file that would establish that the claimant is prevented by his industrial disease from returning to his former position of employment as a cement finisher, which he performed for 45 years before retiring in 1983, two years prior to his 1985 date of diagnosis in this claim.
(Stip. R. 9.)
 {¶ 9} Relator appealed to the commission, which refused relator's appeal in November 1994. On January 13, 2004, relator filed this original action in mandamus.
 {¶ 10} To support a conclusion of law that relator retired from his former position of employment due to back and leg pain, the magistrate in her decision relied upon stipulated statements of fact, which were filed in a prior case before a common pleas court.[3] (Stip. R. 19.).
 {¶ 11} These stipulations, in relevant part, provided:
It is hereby agreed and stipulated by counsel for all parties of record that the following statements of fact are true for the purposes of this lawsuit.
* * *
II. In November of 1982, [relator] retired from active employment as a cement finisher, last working for the Cleveland Cement Company. Plaintiff retired because he was physically unable to perform his job because of back and leg pain.
Id.
 {¶ 12} The stipulation that was filed in the common pleas court expressly provided that the stipulated statements were true "for the purposes of this lawsuit." This stipulation did not provide that the stipulated statements were true for all subsequent litigation. Thus, for purposes of supporting relator's claim for compensation of impairment of earning capacity, we conclude this stipulation does not establish that relator retired because he was physically unable to perform his job due to back and leg pain.
 {¶ 13} Such a conclusion is consistent with this court's opinion in State ex rel. Jeany v. Cleveland Concrete Constr.,Inc., Franklin App. No. 02AP-159, 2002-Ohio-6029, wherein this court denied a writ of mandamus ordering the commission to vacate its denial of relator's 1996 application for permanent total disability. In Jeany, this court found some evidence clearly supported the commission's finding that the relator had voluntarily retired. Id. at ¶ 9. The Jeany court also observed that "[w]e * * * are unwilling to force stipulations made in a separate lawsuit upon similar parties in subsequent litigation. Simplifying litigation for purposes of narrowing the scope of the litigation is a practical necessity and should not be thwarted by fears that the stipulations are going to be binding for all later litigation." Id. at ¶ 10.
 {¶ 14} Finding that the stipulated statements do not establish that relator retired due to his industrial injury and, absent any evidence to the contrary, we cannot conclude that the SHO abused his discretion when he found that relator voluntarily and for reasons unrelated to his industrial injury removed himself from the workforce in 1983, which was two years before the date of disability in this claim. (Stip. R. 13.) Therefore, we find the magistrate erred when she relied upon the stipulated statements in the record and concluded that the evidence showed that relator retired from his former position of employment because he was no longer able to perform that employment as a result of back and leg pain.
 {¶ 15} Furthermore, relator has not directed us to any evidence showing that he had a desire to earn during the period in which impairment has been alleged. See State ex rel. Pauley,
supra, at 264 (observing that "the lack of a `desire to earn' can be dispositive"); State ex rel. Evenflo Juv. Furniture Co., Inc.v. Hinkle (2001), 91 Ohio St.3d 74, 75 (stating that for impaired earning capacity "[State ex rel. CPC Group v. Indus.Comm. (1990), 53 Ohio St.3d 209] and Pauley established the principle that a postinjury desire to work must exist").
 {¶ 16} Having concluded that the SHO did not abuse his discretion when he found that relator voluntarily removed himself from the workforce in 1983 for reasons unrelated to his industrial injury and, absent any evidence that relator had a desire to earn during the period in which impairment was alleged, we therefore conclude the SHO did not abuse his discretion when he denied relator's application for impairment of earning capacity compensation. See State ex rel. Garon, supra, at 290 (stating that "the claimant must persuade the commission, in effect, that he or she wants to work and that only the injury-induced impairment stands in the way").
 {¶ 17} Accordingly, we disagree with the magistrate's conclusion of law that the commission abused its discretion by denying relator's request for impairment of earning capacity compensation.
 {¶ 18} In her decision, the magistrate also concluded that the commission abused its discretion because the SHO failed to address the vocational consultant's report that relator submitted at the October 1994 hearing in which the consultant concluded relator retained no post-injury earning capacity.
 {¶ 19} Whether the SHO abused his discretion by failing to address the vocational consultant's report is a moot issue. Even assuming the SHO failed to consider this vocational report, based upon our independent review, we have already determined that the commission did not abuse its discretion by denying relator's request for compensation for impairment of earning capacity. Therefore, whether the SHO abused his discretion by failing to address the vocational consultant's report presents an issue that has no practical significance. Consequently, we do not address this issue here.
 {¶ 20} Therefore, for the foregoing reasons, we find that relator has not shown a clear legal right to the relief requested. Moreover, as stated above, we disagree with the magistrate's conclusion of law that the commission abused its discretion when it denied relator's request for compensation for impairment of earning capacity because relator voluntarily retired for reasons unrelated to his industrial injury. Additionally, due to mootness, we decline to address whether the SHO abused his discretion by failing to address the vocational consultant's report in his order.
 {¶ 21} Accordingly, for the reasons set forth in this decision, we sustain the commission's objections, although not for reasons set forth in the commission's objections, and deny relator's request for a writ of mandamus.
Objections sustained; writ denied.
Bowman and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Aldo Jeany, : Relator, : v. : No. 04AP-51 Cleveland Concrete Construction, Inc., : (REGULAR CALENDAR) Cleveland Cement Contractors, Inc. and : Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 18, 2004 Michael J. Muldoon, for relator.
Jim Petro, Attorney General, and Keith D. Blosser, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 22} Relator, Aldo Jeany, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which determined that relator was not entitled to receive compensation for impairment of earning capacity, pursuant to former R.C. 4123.57(A), on the basis that relator had voluntarily retired from the workforce for reasons unrelated to his industrial claim. Relator asks that the commission be ordered to find that he is entitled to that compensation.
 {¶ 23} Findings of Fact:
 {¶ 24} 1. On November 19, 1985, relator was diagnosed with "bilateral peroneal nerve palsy."
 {¶ 25} 2. Initially, the commission denied relator's application and disallowed the claim.
 {¶ 26} 3. Relator filed an appeal, pursuant to R.C. 4123.519, to the Franklin County Court of Common Pleas which ultimately granted relator's motion for summary judgment. The judgment of the common pleas court was upheld by this court on appeal inAldo Jeany v. Atlas Constr. Co. (Aug. 15, 1989), Franklin App. No. 88AP-1190.
 {¶ 27} 4. As part of the action in the common pleas court, certain stipulations were entered into, including the following:
[One] Aldo Jeany is a 69-year-old individual who has spent his working career as a cement finisher in the construction industry. Plaintiff commenced his employment as a cement finisher in 1939 and last worked as a cement finisher in 1983.
[Two] In November of 1982, Plaintiff retired from active employment as a cement finisher, last working for the Cleveland Cement Company. Plaintiff retired because he was physically unable to perform his job because of back and leg pain.
[Three] In January, February and March of 1983, Plaintiff left retirement and was employed by Turner Construction Company as a cement finisher. Plaintiff again left work because of back and leg problems. Plaintiff has not been employed anywhere since 1983.
 {¶ 28} 5. After his claim was allowed by the commission, relator filed an application for the determination of permanent partial disability ("PPD"). On August 16, 1993, the administrator for the Ohio Bureau of Workers' Compensation issued a tentative order finding relator entitled to a 35 percent PPD award.
 {¶ 29} 6. On September 3, 1993, relator filed his election form indicating that he wanted his compensation on the basis of his impairment of earning capacity ("IEC").
 {¶ 30} 7. Relator's application was heard before a district hearing officer ("DHO") on August 17, 1994, and resulted in an order denying the requested compensation as follows:
It is the order of the District Hearing Officer that: Claimant's request to receive compensation based upon his impairment of earning capacity is denied. The District Hearing Officer finds that the claimant has failed to satisfy his burden of providing evidence probative on the issue of claimant's post-injury earning capacity. The District Hearing Officer finds that there is no evidence on file which demonstrates that the claimant's industrial injury precludes him from engaging in employment for which he is academically or vocationally qualified. The District Hearing Officer concludes, therefore, that the claimant has not proven an impairment of his earning capacity. Given the foregoing, claimant's motion for compensation pursuant to ORC 4123.57 (A) is denied.
 {¶ 31} 8. Following the DHO order, relator submitted the October 9, 1994 vocational report of Molly S. Williams. Based upon the physical restrictions, Ms. Williams concluded that relator could not return to his former position of employment, noted that he was of advanced age, and that he possessed a limited education. Ms. Williams concluded that relator possessed no skills which would transfer to sedentary employment. Ultimately, based upon his inability to perform his customary past work, his advanced age, limited education, and the fact that he had no transferable skills, Ms. Williams concluded that relator was unable to perform other work and that he retained no post-injury earning capacity.
 {¶ 32} 9. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on October 11, 1994. The SHO affirmed the prior DHO order and provided the following additional reasoning:
* * * The claimant retired on Social Security Retirement in 1983, after 45 years as a cement finisher. His retirement was two years prior to the 1985 date of diagnosis in this claim. There is no persuasive evidence on file to support a conclusion that the claimant did not voluntarily retire in 1983. Likewise, the claimant has offered no persuasive evidence to support his current contention in 1994 that he did not voluntarily decide to remove himself from the work force in 1983, after 45 years of work and at the age of 63 at that time. The claimant testified at hearing that his Social Security Retirement and Union Pension pay him approximately $800.00 per month (gross amount) which is approximately what he would net at his Average Weekly Wage in this claim.
Finally, there is no persuasive evidence in file that would establish that the claimant is prevented by his industrial disease from returning to his former position of employment as a cement finisher, which he performed for 45 years before retiring in 1983, two years prior to his 1985 date of diagnosis in this claim.
 {¶ 33} 10. Further appeal was refused.
 {¶ 34} 11. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 35} Conclusions of Law:
 {¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 37} Under former R.C. 4123.57, a claimant has the option to receive compensation as impaired earning capacity under division (A), or as a fixed weekly amount under division (B). When a claimant elects division (A), proof of actual IEC must be presented to support an award. State ex rel. Johnson v. Indus.Comm. (1988), 40 Ohio St.3d 384. A determination of IEC entails an assessment of permanent medical impairment, and a determination of actual impaired earning capacity. State ex rel.Jabbar v. LTV Steel Co. (1994), 70 Ohio St.3d 664. The determination does not involve mere impairment of earnings, but, rather, involves earning capacity, which connotes not what the claimant did earn, but what the claimant could have earned. "Capacity" logically encompasses the universe of jobs that a claimant, at a given time and based on age, education, skills, physical ability, etc., can do. State ex rel. Eaton Corp. v.Indus. Comm. (1993), 66 Ohio St.3d 180. At the hearing, the burden is upon the claimant to establish the existence of an IEC and a causal connection between the allowed condition and the IEC. State ex rel. Apgar v. Indus. Comm. (1989),42 Ohio St.3d 5.
 {¶ 38} In the present case, at the time of the hearing before the DHO, relator had not yet submitted any evidence of his post-injury earning capacity. As such, the DHO denied his application for compensation for IEC solely because relator had failed to meet his burden of proof. Following the DHO hearing, relator submitted the vocational report of Ms. Williams who opined that relator had no post-injury earning capacity. As such, when the SHO heard the matter, there was some evidence in the record of relator's post-injury earning capacity. Clearly, the SHO could have determined that the report of Ms. Williams was not credible evidence. However, in affirming the prior DHO order without any such determination as to credibility, the SHO abused his discretion.
 {¶ 39} The record in the present case shows that relator retired from his former position of employment because he was no longer able to perform that employment as a result of pain in his back and leg. As such, contrary to the statements made in the SHO's order, relator did not voluntarily retire for reasons unrelated to his work injury. The commission argues that its statements do not contradict the common pleas court stipulations that relator realtor retired from his former employment due to pain but that the commission determined instead that relator had not demonstrated that he did not voluntarily retire from the entire workforce. The commission points out that there is no evidence that relator attempted to re-enter the workforce after 1983. Perhaps that is what the commission meant; however, that is not clear from the order. The final SHO order, which affirmed the prior DHO order, ends up denying relator compensation on the basis that there was no evidence in the record of relator's post-injury earning capacity and the fact that relator voluntarily retired for reasons unrelated to his industrial injury. However, at the time of the hearing, there was some evidence in the record of relator's post-injury earning capacity and the record is clear that relator retired from his former position of employment due solely to his allowed industrial injury. As such, this magistrate concludes that the commission did abuse its discretion.
 {¶ 40} Based on the foregoing, it is this magistrate's decision that relator has emonstrated that the commission abused its discretion by failing to address the evidence submitted in support of relator's claim that he had an impaired earning capacity and by further denying his requested compensation on the basis that he had voluntarily retired for reasons unrelated to the industrial injury. Accordingly, this court should issue a writ of mandamus ordering the commission to vacate its order denying relator's application for compensation for IEC and to issue a new order, either granting or denying the application, after considering the evidence in the record and concerning relator's post-injury earning capacity, further determining whether relator voluntarily retired from the entire workforce.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE
[1] By entry filed April 20, 2004, Stephanie Bisca Brooks was substituted as magistrate for the previously appointed magistrate, Patricia Davidson.
[2] Former R.C. 4123.57, which was effective July 27, 1979, and which was in effect at the time of relator's effective date of disability, in pertinent part, provided: "Partial disability compensation shall be paid as follows, provided, that an employee may elect as between divisions (A) and (B) of this section as to the manner of receiving the compensation set forth in this section: (A) In case of injury or occupational disease, resulting in partial disability other than those exclusively provided for under division (C) of this section, the employee shall receive per week sixty-six and two-thirds per cent of the impairment of his earning capacity which results from the injury or occupational disease during the continuance thereof, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, but not in a greater sum in the aggregate than seventeen thousand five hundred dollars. * * *"
[3] Jeany v. Atlas Constr. Co., Franklin County Court of Common Pleas case No. 87CV-06-3799. We observe that the caption in the common pleas case lists different parties than those in the instant case.